UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MONICA GRAY,** : | |
| : | |
| **Plaintiff,** : | Case No. 2:20-cv-6038 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **STATE FARM MUTUAL** : | Magistrate Judge Deavers |
| **AUTOMOBILE INSURANCE** : | |
| **COMPANY,** *et al.*, : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 30). For the reasons set forth below, Defendants' Motion is **GRANTED**.

### I.  BACKGROUND

Plaintiff's employment with Defendant State Farm was terminated on January 2, 2018. Defendant claims that it fired Plaintiff because she had falsified eleven manual timecard entries in November 2017. Plaintiff claims that she was unfairly terminated for helping her friend and colleague, Sonya Mauter, and that Defendant Joe Kyle provided a false narrative to State Farm which resulted in "a very slanted, narrow and one-sided investigation of Ms. Gray." (ECF No. 42 at 1). Plaintiff has sued Defendants for claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Ohio Revised Code Chapter 4112.

### II.  STATEMENT OF FACTS

Monica Gray began working at State Farm in 2003. (ECF No. 1 at 2). Sonya Mauter began working at the same in 1996. (ECF No. 1 at 2). Ms. Mauter had a known disability as defined under the ADA and State Farm knew of this disability. (*Id.*). On August 14, 2017, Ms. Mauter

returned to work following a leave of absence to recover from serious injuries sustained during a car accident. (ECF No. 42 at 1). On August 17, 2017, Ms. Mauter's Team Claims Manager, Mr. Kyle, told Ms. Mauter that State Farm would no longer accommodate her disability, citing that the requirements of the position had changed. (ECF No. 1 at 3). Mr. Kyle demanded that Ms. Mauter begin working overtime, to which she replied that Mr. Kyle's demand directly contradicted her doctor's orders. (*Id.*). State Farm gave Ms. Mauter until September 12, 2017 to obtain a release from her doctor stating that she could work overtime. (*Id.*). State Farm never told Ms. Mauter exactly how much overtime she would need to have her doctor approve, nor the amount of overtime that she would actually need to work. (*Id.*). Mr. Kyle and Human Resources told Ms. Mauter that if she did not furnish the release from her doctor, then she would be required to use Paid Time Off and that she would be eventually terminated. (ECF No. 1 at 4).

Ms. Mauter then came to Ms. Gray for assistance with her situation. (ECF No. 42 at 2). Ms. Gray researched accommodations under the ADA and contacted HR to determine what exactly was to be required of Ms. Mauter. (*Id.*). Ms. Gray also filed a complaint against Mr. Kyle with the HR Code of Conduct Hotline regarding his treatment of Ms. Mauter. (*Id.*). Ms. Gray coached Ms. Mauter on how to discuss the accommodation and advised Ms. Mauter to seek legal counsel and file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*). Ms. Mauter filed a formal charge with the EEOC on September 5, 2017. (*Id.*). During this process, Ms. Mauter made sure that Mr. Kyle knew that Ms. Gray was assisting her. (*Id.*). Ms. Mauter also openly discussed Ms. Gray's assistance with their coworkers, for which Mr. Kyle issued her a written discipline notice. (*Id.*). Based on this, Ms. Mauter transferred to another Team Claims Manager in October 2017.

In November 2017, Ms. Gray's manager took a vacation the week after Thanksgiving, and Mr. Kyle was substituting for him. (*Id.*). During that week, Mr. Kyle reviewed employee timecards (something that Ms. Gray's regular manager had not done) and saw computer-generated alerts that Ms. Gray had entered manual time entries. (ECF No. 30 at 1). He compared those entries to a computer activity log and noticed several discrepancies between the times Ms. Gray claimed and the times her computer showed she was active. (*Id.*). Mr. Kyle brought this to the attention of his supervisor, who told him to refer the matter to Human Resources, which he did. (*Id.*). Mr. Kyle alleged that Ms. Gray took long breaks and lunches, using the manual entries to avoid discipline. (ECF No. 42 at 3). He never spoke with Ms. Gray about these entries but reported to HR that he personally observed her actions and that she had been warned against doing so. (*Id.*).

On December 12, 2017, Ms. Gray was called into a meeting by her regular supervisor where she was questioned about her position and timecard falsification. (*Id.*). She did not offer an explanation for her timecard entries, instead asserting that Mr. Kyle was targeting her in retaliation for her assistance with Ms. Mauter. (ECF No. 30 at 2). Ms. Gray did account for some small increments of time by reminding her supervisor of how much she assisted her coworkers as a team mentor and regularly received communications from the State Farm Agency Career Track. (ECF No. 42 at 3). On December 24, 2017, Ms. Gray filed a charge with the EEOC. (ECF No. 30 at 20). On January 1, 2018, Ms. Gray sent her supervisor a one-page email to explain her timecard discrepancies, but only as to three of the eleven discrepancies in question, and no specific reasons were provided. (ECF No. 30 at 18).

On January 2, 2018, following an investigation, Ms. Gray was fired by State Farm, who claims that she was terminated because "the Company discovered that she had falsified 11 manual time entries on her timecards in November 2017, which allowed her to obtain pay she did not earn,

and in some cases avoid attendance points for excessive meals." (ECF No. 30 at 1). State Farm acknowledged that it did not take Ms. Gray's concerns into account during the investigation. (ECF No. 42 at 4). State Farm did not investigate Ms. Gray's allegations of retaliation by Mr. Kyle, despite the fact that all relevant information initiating the investigation was provided by him. (*Id.*). Nor did State Farm investigate how Ms. Gray's coworkers recorded their time, only her. (*Id.*). No other employee was terminated or investigated for any violation of State Farm's Pay Policy at the Newark, Ohio location in 2017. (*Id.*).

### III. PROCEDURAL BACKGROUND

On January 11, 2018, Ms. Gray filed an amended charge with the EEOC alleging that she was fired in retaliation for helping Ms. Mauter. (ECF No. 30 at 4). The EEOC was "unable to conclude that the information obtained establishes violations of the statutes," but "[did] not certify that the respondent [was] in compliance with the statutes" and issued a 90-day Right to Sue letter on August 31, 2020. (ECF No. 1 at PAGEID 16).

On November 24, 2020, Ms. Gray filed her initial complaint with this Court against Mr. Kyle and State Farm, alleging retaliation under the ADA, 42 U.S.C. § 12203 (Count I), retaliation under Ohio Rev. Code ch. 4112.02(I) (Count II), and aiding and abetting retaliation under Ohio Rev. Code ch. 4112.02(J) (Count III). (ECF No. 1). On January 25, 2021, Defendants filed their Answer (ECF No. 4). The parties then engaged in extensive discovery and filed multiple motions for extension of time.

Defendants have now filed a Motion for Summary Judgement (ECF No. 30), to which Plaintiff has properly responded (ECF No. 42) and Defendants have properly replied (ECF No. 43). The Motion is now ripe for consideration.

4

IV.        STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The Court must view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). Summary judgment is inappropriate, however, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative" is not enough to defeat a motion for summary judgment, *id.* at 249–50, nor is "[t]he mere existence of a scintilla of evidence to support [the non-moving party's] position" sufficient. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

The initial burden rests upon the movant to present the Court with law and argument in support of its motion, and to identify the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th

Cir. 1995) (noting that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

## V.     LAW AND ANALYSIS

Plaintiff alleges claims under Ohio law and federal law. Because the "analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02[,]" this Court will evaluate the Ohio claims "concurrently and under the same standards as claims brought under the ADA." *Nilles v. Givaudan Flavors Corp.*, 521 Fed. Appx. 364, 367-68 (6th Cir. 2013).

Allegations of discrimination in the employment context may be established by the introduction of either direct evidence of discrimination or by providing circumstantial evidence that supports an inference of discrimination. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995)). Direct evidence of discrimination, such as "'eyewitness' testimony as to the employer's mental processes," *U.S. Postal Serv. Bd. of Governors v. Aiken*, 460 U.S. 711, 716 (1983), is rarely available, *see Kline*, 128 F.3d at 348.

Here, Ms. Gray alleges that she has circumstantial evidence that State Farm discriminated against her. In assessing allegations of discrimination based on circumstantial evidence, courts rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). Under that framework, the plaintiff alleging discrimination based on circumstantial evidence bears the initial burden of establishing a *prima facie* case of retaliation, by demonstrating that: "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated,

non-protected employees." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal citations omitted)). Where the plaintiff is a member of a majority group, however, she bears an additional "burden of demonstrating that [s]he was intentionally discriminated against 'despite [her] majority status.'" *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (internal citations omitted). As such, a plaintiff alleging reverse discrimination must show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority" to establish the first prong of the *prima facie* case. *Id.* (quoting *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)); *see also Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 837 (6th Cir. 2012) (internal citations omitted).

### 1. Protected Activity

The first question is whether Plaintiff engaged in activity that is protected. A plaintiff may satisfy the pleading requirement for protected activity by "alleging conduct" that falls within one of two clauses in the statute, which says it is an:

> unlawful employment practice for an employer to discriminate against any of his employees ... [1] because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020) (quoting 42 U.S.C. § 2000e–3(a)). Accordingly, "[t]he first clause is known as the "opposition clause," and the second as the "participation clause." *Id.* The "Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "[t]o resist or antagonize …; to contend against; to confront; resist; withstand." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)).

7

Additionally, "[e]xamples of opposition activity protected under Title VII include complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Id.* (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (internal quotations omitted)). The opposition clause protects the filing of formal discrimination charges with the EEOC. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Here, Ms. Gray plainly engaged in a protected activity by filing a discrimination charge with the EEOC. *Id.* There is no genuine dispute as to this point.

### 2. Employer Knew of the Activity

The second part of the analysis is to determine whether Defendant knew of Plaintiff's participation in FLSA protected activity. In many cases, a plaintiff will have direct evidence of the decision-maker's knowledge, because, for example, that decision-maker was the supervisor to whom they had previously made complaints. But such direct evidence is not necessary, and "a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall*, 287 F.3d at 552. At least one district court inferred knowledge about a plaintiff's protected activity "from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Id.* at 553 (citing *Kralowec v. Prince George's County, Maryland*, 503 F. Supp. 985 (D. Md. 1980), *aff'd* 679 F.2d 883 (4th. Cir), *cert. denied* 459 US. 872 (1982). In *Kralowec*, the court concluded it was "highly improbable" that the two parties – the one to whom the plaintiff complained and the one who eventually dismissed the plaintiff – "would not have discussed the plaintiff's complaint as soon as" they learned of it. *Mulhall* at 553 (citing *Kralowec* at 1010).

8

Ms. Gray alleges that State Farm knew about this protected activity when it terminated her employment. (ECF No. 42 at 49). Ms. Gray must further prove, however, that the decisionmakers had knowledge of her protected activity prior to terminating her. *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 513 (6th Cir. 2008); *Mulhall v. Ashcroft*, 287 F.3d 543, 551-52 (6th Cir. 2002). Such knowledge may be established by providing circumstantial evidence from which a reasonable jury could infer the decisionmaker's knowledge. *Mulhall*, 287 F.3d 543, at 552-53. Ms. Mauter told Mr. Kyle that Ms. Gray was helping her, and Mr. Kyle knew that Ms. Gray filed a formal complaint with HR against him. (ECF No. 42 at 51). It is evident that State Farm was aware of Ms. Gray's protected activity prior to her termination.

### 3. Adverse Employment Action

The Sixth Circuit, adopting a test from the Seventh Circuit, defines a "materially adverse" employment action as a

> change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (adopting these factors in the Title VII context); *see also Bowmann v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000) (same); *Pettit v. Steppingstone, Center for the Potentially Gifted*, 429 Fed. Appx. 524, 532 (6th Cir. 2011) (unpublished) (applying these factors to an FLSA claim). Unlike other cases featuring demotions or a change in responsibility where the "adverse" or "material" nature of the employment action is arguable, here no such leeway exists. Ms. Gray's termination on January 2, 2018 is plainly an adverse employment action. *Hollins*, 188 F.3d 652. It is further clear that Ms. Gray was qualified for the position, given her employment with State Farm for 15 years, her service

9

as a team mentor, and her regular receipt of emails and calls from the State Farm Agency Career Track. (ECF No. 42 at 3).

*4. Causal Connection*

The fourth step of the analysis concerns whether there was a causal connection between the plaintiff's protected activity and the adverse employment action. A plaintiff can demonstrate a causal connection either through direct evidence or "through knowledge coupled with a closeness in time that creates an inference of causation." *Parnell v. West*, 1997 WL 271751 at *3 (6th Cir. 1997) (unpublished) (citing *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). For the plaintiff to meet their burden, "temporal proximity, when coupled with other facts, may be sufficient in certain cases to establish the causal-connection prong…" *Mulhall*, 287 F.3d at 551. No single piece of circumstantial evidence is dispositive, but "evidence that the defendant treated the plaintiff differently from identically-situated employees or that adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).

Ms. Gray was indeed treated differently than similarly-situated, non-protected employees. She was the only employee to be investigated for timecard discrepancies, despite the practice being common among employees. (ECF No. 42 at 4). That being said, however, it is also true that Ms. Gray's briefing fails to address State Farm's alleged reason for terminating her: that she was not dismissed for making *manual* time entries, but rather for making *false* time entries. She must demonstrate that there was a causal connection between her protected activity and her termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "At the prima facie stage, this burden 'is not onerous,' and can be met through 'evidence that defendant treated the plaintiff differently from similarly situated employees *or that the adverse action was taken shortly after the*

*plaintiff's exercise of protected rights.*'" *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)) (emphasis added). Here, Ms. Gray filed her original EEOC charge on December 24, 2017 (ECF No. 30 at 20) and was terminated on January 2, 2018. (ECF No. 30 at 1). This temporal proximity of just over one week is enough to clear the relatively low bar of the *prima facie* stage.

If a plaintiff is able to demonstrate a *prima facie* case of employment discrimination, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. This is satisfied if the employer "explains what [it] has done or produces evidence of legitimate nondiscriminatory reasons." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). Here, State Farm has clearly provided a legitimate reason for Ms. Gray's termination in the form of her falsification of timecard entries.

5. *Pretext*

If the employer is able to satisfy its burden, "the burden of production shifts back to [Plaintiff] to demonstrate that [the employer's] proffered reason was a mere pretext for discrimination." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citing *Abbott v. Crown Motors Co.*, 348 F.3d 537, 542 (6th Cir. 2003)). There are three ways in which a plaintiff can demonstrate pretext: "(1) that the proffered reasons had no basis in law, (2) that the proffered reasons did not actually motivate the employer's actions, or (3) that they were insufficient to motivate the employer's actions." *Romans*, 668 F.3d at 839 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Here, even if Ms. Gray can establish a *prima facie* case for retaliation, she cannot prove that State Farm's proffered reason for terminating her was pretextual. She alleges that State Farm's proffered reasons were insufficient to motivate their actions in terminating her. This, critically, is

11

where the genuine issue of material fact lies. In retaliation cases, "the employee ... must offer some evidence that not only were the employer's reasons false, but that retaliation was the real reason for the adverse action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 273 F.3d 309, 315 (6th Cir. 2001)). Further, an employee cannot establish pretext when an employer has an "honest belief" in the nondiscriminatory reason upon which it made the adverse employment decision. *Id.* (citing *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001)). The essential question in "assessing whether an employer holds such an honest belief is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998)).

      Here, State Farm has shown that Ms. Gray falsified her timecard entries on multiple occasions. Ms. Gray fails to demonstrate that State Farm's proffered reasons were insufficient to motivate their actions in terminating her. While the temporal proximity between the filing of her EEOC charge and her termination is certainly curious, her false time entries are equally condemning. Because State Farm had an "honest belief" in its nondiscriminatory reason (timecard falsification) for terminating Ms. Gray, she cannot establish pretext. *Green v. Central Ohio Transit Authority*, 2015 WL 2194786 at *11 (S.D. Ohio 2015). She has therefore failed to present evidence from which a reasonable jury could conclude that retaliation was the real reason for her termination. *Id.*

## VI. CONCLUSION

For the reasons stated above, summary judgement is appropriate at this time. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 30) is **GRANTED**. The Clerk is **DIRECTED** to enter judgement in favor of State Farm.

**IT IS SO ORDERED.**

							_____
							**ALGENON L. MARBLEY**
							**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  February 5, 2024**